### LOTHROP WIGHT & another *vs.* LEVI HALE.

A writ, on which an attachment of property has been made, may be amended by
substituting "Wight" for "Wright" as the name of one of the plaintiffs, with-
out vacating the attachment.

THIS was a writ of entry to recover a tract of land in
Taunton described in the writ. The demandants declared
on their own seizin, within twenty years, and a disseizin by
the tenant. The tenant pleaded nul disseizin, on which issue
was joined, and the cause tried before *Wilde*, J., in this court.

It was in evidence, on the part of the demandants, or ad-
mitted, that, in April, 1841, Charles B. Wilmarth was the
owner of the demanded premises, in common with the heirs
of Dan Wilmarth, deceased ; that, on the 13th of the same
month, the demandants attached the premises on a writ in
their favor (by the names of Lothrop Wright and William A.
Brown, jr.,) against Charles B. Wilmarth, returnable at the
court of common pleas then next to be held at New Bedford ;
that, at the return term, the writ was entered, and continued
from term to term, until the December term, 1844, when judg-
ment was rendered for the plaintiffs therein ; that execution
issued upon the judgment, on the 2d of January, 1845, and,
within thirty days from the rendition of the judgment, was
levied upon an undivided portion of the real estate of the
judgment debtor.

At the term of this court, for the county of Bristol, held in
April, 1846, the demandants petitioned for partition ; which,

after notice and other proceedings, was ordered, and the demanded premises were set off to the demandants to be held by them in severalty. Partition was made on the 5th of November, 1846, and recorded on the 30th of the same month.

It appeared by the clerk's docket, that for several terms of the court of common pleas, after the entry of the suit against Charles B. Wilmarth, the defendant therein appeared by counsel, and that the action was afterwards continued upon the docket by the plaintiffs for judgment; that, at the September term, 1844, the plaintiffs moved to amend their writ by striking out the letter "r" from the name of Wright, one of the plaintiffs named in the writ; and that at the following December term, the motion was granted, without any appearance for the defendants in the action, either when the motion was made or allowed.

The tenant, besides insisting upon several objections taken by him to the regularity of the proceedings as above stated, relied upon a title in himself to the demanded premises, derived from Charles B. Wilmarth, through mesne conveyances; and, for this purpose, he read (1) a deed from Wilmarth to William B. Crandell, dated November 16th, 1842, purporting to convey, for the consideration of $4000, all the interest which the grantor had in the real estate of Dan Wilmarth, deceased, being an undivided seventh part, (2) a quitclaim deed of the same from Crandell to Tisdale, dated July 21st, 1846, (3) a deed of the 22d of the same month, by which Tisdale and others conveyed the demanded premises to the tenant, and (4) a deed of the premises of the same date, from the other heirs of Dan Wilmarth to the tenant. Crandell's deed to Tisdale was recorded on the 25th of July, 1846, and the deeds to the tenant on the 28th of April, 1847.

The tenant contended, that the amendment of the writ in the action of the demandants against Charles B. Wilmarth, avoided their attachment; and he relied upon the title made out by him, as having been perfected before the demandants caused the partition above mentioned to be made. The demandants thereupon suggested, that the several deeds relied

upon by the tenant were fraudulent ; and, for the purpose of trying the question of fraud, the judge ruled in favor of the tenant, as to the effect of the amendment.

The demandants then introduced evidence to show that the deeds from Charles B. Wilmarth to Crandell, and from Crandell to Tisdale, were fraudulent ; and, after the evidence was in, it was admitted by the tenant, that the evidence sufficiently proved those two deeds to be fraudulent against creditors.

The demandants then contended, that if they derived no title to the demanded premises, by virtue of their attachment ; yet, inasmuch- as at the time of the levy of their execution and their petition for partition, the estate was still in Charles B. Wilmarth, the levy vested in them a complete title to the demanded premises ; but the judge ruled otherwise, and the trial proceeded.

The jury were instructed, that notwithstanding the fraud was clearly established by proof in the deeds to Crandell and Tisdale, yet, before the demandants could prevail, they must bring home to the tenant the knowledge of the fraud in those deeds, or show that he knew of the levy of the execution of the demandants.

The jury returned a verdict for the tenant.

If these several rulings were correct, the verdict is to stand ; otherwise to be set aside, and a new trial granted ; or such other disposition made of the case as the court shall order.

The case was argued, in writing, upon both the questions raised by the report, namely, first, whether the amendment of the writ in the demandants' action against Wilmarth vacated the attachment ; and, second, whether the demandants acquired any title to the premises by the levy, if the attachment was vacated by the amendment ; but this last question, in consequence of the view taken by the court of the first, became immaterial.

*T. D. Eliot* and *A. Bassett*, for the demandants.

1. The court of common pleas had authority by law to make the amendment.   Rev. Sts. *c.* 100, §§ 21, 22 ; *St.* 1839, *c.* 151, § 1.

2. Amendments are admissible to correct a misnomer of a party, plaintiff, defendant or trustee. *Kincaid* v. *Howe*, 10 Mass. 203 ; *Bullard* v. *Nantucket Bank*, 5 Mass. 99 ; *Sherman* v. *Connecticut Bridge*, 11 Mass. 338 ; *American Bank* v. *Doolittle*, 14 Pick. 123 ; *McGee* v. *Barber*, 14 Pick. 212 ; *Blood* v. *Harrington*, 8 Pick. 552.

3. The attachment was not dissolved by the amendment ; the liability of the defendant not being increased thereby. In nearly all the cases, in which it has been held, that an amendment vacated an attachment, the ground was that the defendant's liability was increased. *Danielson* v. *Andrews*, 1 Pick. 156 ; *Willis* v. *Crooker*, 1 Pick. 204, 205 ; *Fairfield* v. *Baldwin*, 12 Pick. 388, 395 ; *Putnam* v. *Hall*, 3 Pick. 445 ; *Haven* v. *Snow*, 14 Pick. 28, 33, 34. The exceptions are, where an officer fills or alters a writ. *Smith* v. *Saxton*, 6 Pick. 483 ; *Clark* v. *Lyman*, 10 Pick. 45.

4. The amendment was a proper one to be made, the error being merely circumstantial. There was a misspelling of the name of one of the plaintiffs in an action upon a note payable to the two as partners ; and the name of the other plaintiff was correctly given. The tenant was not a party or interested in that question ; and, if he has since become interested, he cannot except to what was before legally and properly done. *Johnson* v. *Huntington*, 13 Conn. 47 ; *Winsor* v. *Lombard*, 18 Pick. 57 ; *Thayer* v. *Hollis*, 3 Met. 369 ; *Perley* v. *Brown*, 12 N. H. 496.

*H. Pratt* (with whom was *J. H. Clifford*), for the tenant.

The real question, in this case, is not as to the power of the court to grant amendments, but as to the effect of an amendment, like that under consideration, where the rights of others have intervened.

An amendment discharges bail. *Hill* v. *Hunnewell*, 1 Pick. 192 ; even though the change is beneficial to the bail ; *Bean* v. *Parker*, 17 Mass. 591, 603. So, amendments vacate attachments, when the rights of others may be thereby affected. *Willis* v. *Crooker*, 1 Pick. 204 ; *Fairfield* v. *Baldwin*, 12 Pick. 388 ; *Danielson* v. *Andrews*, 1 Pick. 156 ; *Hoyt* v. *Maloney*, 1 N. H. 322.

In *Putnam* v. *Hall*, 3 Pick. 445, it was held, that the amendment of an error, occasioned by a slip of the pen, vacated the attachment as to another creditor, although the amendment was by consent of the defendant. In *Denny* v. *Ward*, 3 Pick. 199 (see also the note on p. 200,) where the name of a third defendant, as surviving partner, was added, the attachment was held to be dissolved. In *Haven* v. *Snow*, 14 Pick. 28, there was notice to the other creditor; the attorney being the same in both cases; and the officer had a memorandum to amend by. In *Emerson* v. *Upton*, 9 Pick. 167, 171, it is said, that the effect of the amendment of writs, when any change has been made, is limited to the parties to the suit, in which the amendment is allowed. *Smith* v. *Saxton*, 6 Pick. 483 ; *Clark* v. *Lyman*, 10 Pick. 48.

By the change of name in the plaintiff's writ, without the knowledge of the defendant, the latter might be injuriously affected to the whole amount of the claim. And the defendant, or his grantees of the estate under attachment, ought to have been notified, so that they might have resisted the attachment, or the writ as amended. See *Fairfield* v. *Baldwin*, 12 Pick. 392; *Wormall* v. *Young*, 5 B. & Cres. 666; *Ramsdell* v. *Creasy*, 10 Mass. 170.

An officer will not be permitted to amend his return, so as to affect the rights of third persons. *Emerson* v. *Upton*, 9 Pick. 167; *Williams* v. *Brackett*, 8 Mass. 240 ; *Freeman* v. *Paul*, 3 Greenl. R. 260; *Fairfield* v. *Paine*, 9 Shepl. 498.

The court will not intentionally allow an officer to amend his return, even from his own memorandum, where the rights of purchasers have intervened. *Bates* v. *Willard*, 10 Met. 81.

The counsel also referred to the following authorities, relating to the subject of misnomer and variance : *Comm'th* v. *Perkins*, 1 Pick. 388; *Lanesborough* v. *New Ashford*, 5 Pick. 190 ; *Mann* v. *Arley*, 4 Cow. 148; *Henderson* v. *Ballantyne*, 4 Cow. 549 ; *Griswold* v. *Sedgwick*, 6 Cow. 456; *Shadgett* v. *Clipson*, 8 East, 328 ; *Ahitbol* v. *Beniditto*, 2 Taunt. 400 ; *Moore* v. *Magan*, 16 M. & W. 95, and cases there cited.

*T. G. Coffin* replied.

1. If judgment had been rendered without the amendment, Wilmarth himself, having neglected to avail himself of the misnomer, and been defaulted, could not afterwards take advantage of it. *Downs* v. *Witherington,* 2 Taunt. 244. If Wilmarth could not now avail himself of the mistake, neither can the tenant. *Parkman* v. *Crosby,* 16 Pick. 297, 303. If the judgment would have been good without the amendment, the making of it cannot now impeach the proceedings so as to defeat the attachment.

2. The general rule is, that an amendment does not defeat an attachment, unless the alteration tends to increase the liability of the defendant. The cases referred to of *Danielson* v. *Andrews,* 1 Pick. 156, *Hill* v. *Hunnewell,* 1 Pick. 192, and *Willis* v. *Crooker,* 1 Pick. 204, are not analogous in principle. In those cases, the *ad damnum* was increased, and a new count for a different cause of action supplied. In *Putnam* v. *Hall,* 3 Pick. 445, the amount for which the attachment was directed was increased from six to six hundred dollars, but the defendant's liability for the debt was not thereby increased. So, in *Miller* v. *Clark,* 8 Pick. 412, new counts were introduced by way of amendment, varying the parties to whom and for whose use the promise was made, and the bail was not thereby discharged. In the present case, when judgment was rendered, there was no subsequent attaching creditor, or intervening purchaser, whose rights could be affected by the amendment.

WILDE, J. The principal question to be decided in this case is, whether the plaintiffs' attachment of the demanded premises, in their action against Charles B. Wilmarth, was dissolved by the amendment of the writ in that case.

That the court were not only authorized, but required, to allow that amendment, cannot admit of a doubt. By the Rev. Sts. *c.* 100, § 21, it is enacted, " that no writ, process, declaration, or other proceeding in the courts, or course of justice, shall be abated, arrested, quashed or reversed, for any circumstantial errors or mistakes, when the person and case

may be rightly understood by the court." And by the twenty-fourth section it is further enacted, that no judgment shall be reversed for any defect or imperfection in matter of form, which might by law have been amended. And by the *St.* of 1839, *c.* 151, § 1, it is provided, that amendments, not material to the merits of the case, and by which the opposite party cannot be prejudiced, may be allowed without payment of costs. It has been argued for the defendant, that by the amendment a new plaintiff and a new firm were introduced; but we think it clear, that such was not the effect of the amendment. The effect was properly to correct a clerical mistake, which had occurred by the misnomer of one of the plaintiffs; and it is quite clear, that such a mistake may be corrected by an amendment.

But it has been argued by the defendant's counsel, that however this may be, the amendment cannot defeat the intervening title, acquired by the party under whom the tenant claims, before the amendment. On this point several cases have been cited; but the decisions in those cases are not applicable to the amendment in this case. In *Putnam* v. *Hall*, 3 Pick. 445, the officer was directed to attach the defendant's property to the amount of six dollars, and by the amendment it was altered to six hundred dollars, and that was held to be a material alteration. In the case of *Denny* v. *Ward*, 3 Pick. 199, a new party was introduced by the amendment. And in *Emerson* v. *Upton*, 9 Pick. 167, the amendment was in the officer's return; and the grounds of the decision have little or no bearing on the amendments of writs, none certainly as to mere amendments of form. But it was said in that case by Parker, C. J., "that it will be found, on examination of the cases in which amendments have been granted, that the effect of them, when any change has been made, has been limited to the parties to the suit in which the amendment has been granted." But in *Haven* v. *Snow*, 14 Pick. 28, it is said that this remark requires some explanation. " It must not be inferred therefrom," it is said, " that all amendments are to be thus limited; for it is clear, we think,

that amendments in form merely will not dissolve an attachment, so as to let in subsequently attaching creditors, or discharge bail. To have this effect, the amendment must be such as to let in some new demand or new cause of action."

This distinction seems to us to be well founded, and it is decisive in the present case. The misnomer was a mere mistake ; the name of one of the plaintiffs was written Wright, instead of Wight, as it should have been ; but the other plaintiff, Brown, was rightly named and described, and they sued as copartners on a note payable to Wight & Brown. It was competent, therefore, for them to prove that Brown's partner was named Wight, and not Wright, and thus to verify the fact that no new party or new demand was introduced by the amendment. The mistake, therefore, was not material to the merits of the case ; nor was the amendment prejudicial to the defendant, within the meaning of the *St.* 1839, *c.* 151, § 1.

It is objected, that the defendant, or his grantee of the estate attached, should have been notified of the motion to amend ; but the defendant had appeared, and, after the suit had been continued from term to term for several terms, he was defaulted. He had an opportunity, therefore, to take advantage of the mistake, if any advantage could be taken ; and this he waived by his default.

As to notice to his grantee, it does not appear that the plaintiffs had any notice of the grant ; but if they had notice, it would be immaterial, for the grantee could have made no valid objection to the amendment. If any such objection could have been made, the defendant might avail himself of it in the present action.

As to the objection made to the partition, that is not open for consideration on this report, but may be made on the new trial.                        *New trial granted.*